Ray W. Droke v. Commissioner.
Ray W. Droke v. Commissioner
Docket Nos. 43402, 43403.
United States Tax Court
1953 Tax Ct. Memo LEXIS 205; 12 T.C.M. (CCH) 702; T.C.M. (RIA) 53219; June 19, 1953
Wallace Lopez, Esq., 1517-18 First National Bank Building, Memphis, Tenn., for the petitioner. Charles R. Hembree, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: These proceedings were consolidated and involve deficiencies in income tax as follows: Docket No.
Year
Deficiency
43402
1949
$240.05
43403
1950
209.00 In the determination of these deficiencies respondent disallowed in each year exemptions of $600 each for two sons and a step-daughter, and a deduction of $650 in 1949 for a bad debt. The issues are whether petitioner is entitled to exemptions for his two sons, or in lieu thereof an amount *206 for alimony payments, and whether the deduction claimed for a bad debt should be allowed. Findings of Fact The petitioner, a resident of Memphis, Tennessee, filed his returns for the taxable years with the collector of internal revenue for the district of Tennessee. On April 12, 1946, the Chancery Court of Kingsport, Tennessee, signed a decree, in pursuance of an agreement between petitioner and his wife in connection with a divorce proceeding filed by petitioner, to which his wife filed a cross bill, ordering that petitioner pay to his wife for use of herself and children the sum of $60 a month until the next term of the court, and granting the wife and children the right to occupy the home in which they lived until further orders of the court. On October 11, 1948, the court issued another order in the proceeding reading as follows: "On this the 11th day of October, 1948, at the regular October term of the Chancery Court in Kingsport, Tennessee, came the cross-complainant, Eloise Droke, and the cross-defendant, Ray W. Droke, failing to appear and answer, and upon motion of the cross-complainant, the order originally entered in this cause and revived at the last term if [sic] *207 this Court, ordering and directing the cross-defendant, Ray W. Droke, to pay to the cross-complainant Eloise Droke, for the use of herself and the children the sum of Eighty Dollars [1] ($80.00) per month, is revived and made an order at this term of the court, and this cause shall remain continued until the next term of this Court." No further orders were issued by the court in the proceeding, and no decree of divorce was ever entered by the court. On September 5, 1946, petitioner was granted an absolute divorce by a district court of Nevada. In its decree the court ordered petitioner to pay to the wife the sum of $60 a month for the support of their two minor children until the children became of age or self-supporting. However, petitioner concedes that the payments involved herein were made pursuant to the orders of the Tennessee court. At some undisclosed time prior to March 21, 1950, the petition filed by petitioner in Tennessee for a divorce was dismissed on his motion, but the wife's cross-bill was not dismissed. During 1949 petitioner, *208 pursuant to order of the Tennessee court, made 23 semiannual payments of $30 each to his wife for the support of herself and two children, and made 6 payments of a like amount each between September 28 and December 18 in 1950. During the first half of 1950 there was some correspondence between petitioner and his counsel and the wife's attorney about unpaid installments for the support of the wife and her children due under the order of the Tennessee court. In July 1950 the attorney for the wife demanded that petitioner convey to his wife the interest he had in a parcel of jointly owned real property. Petitioner conveyed his interest to her in October 1950. As part of the consideration for the conveyance the wife waived her claim for delinquent payments for support for herself and children. At some undisclosed time, but after petitioner filed a suit for divorce, bonds in the amount of $300 were cashed by petitioner's son. On March 27, 1946, C. J. White executed a note in the amount of $650 payable to petitioner in 90 days. About April 23, 1947, petitioner received a notice from a Referee in Bankruptcy that May 28, 1947, had been set as the last day for filing objections to the *209 discharge of C. J. White as a bankrupt in proceedings then pending in the District Court for the Northeastern Division of the Eastern District of Tennessee. Each time petitioner visited his home after the note became due he endeavored to ascertain the whereabouts of C. J. White but without success. The note has not been paid. Respondent determined that the debt became worthless in 1947. In 1949 and 1950 petitioner's wife reported income of $3,085.48 and $3,344.44, respectively, without including any amount for payments received from petitioner for maintenance and support of herself and children. The wife claimed exemptions for the children as dependents. Opinion The exemptions claimed by the petitioner for his two children were disallowed by the respondent upon the ground that petitioner did not furnish more than one-half of the cost of their support. The statute authorizes credits of $600 each for dependents only when in excess of one-half of the support of the dependent was received from the taxpayer. Section 25 (b) (1) (3), I.R.C. The respondent's determination is presumed to be correct. Petitioner's burden before us was to produce evidence sufficient *210 to overcome the presumption and meet the condition of the applicable statute. Upon being reminded by the Court near the close of the hearing of proof required to overcome the respondent's finding that petitioner had contributed less than one-half of the support costs, counsel for the petitioner remarked that "we have no way of proving that, being in the hands of my enemy. I am willing to stake it all on the alimony questions." Respondent has construed the statement as an abandonment by the petitioner of the issue relating to dependents. Petitioner does not so regard it and contends total payments of $3,420 for "alimony and child support" during the two years, or $1,710 each year on a prorated basis. This, he says, clearly demonstrates payment of more than one-half of the cost of support of the children. Petitioner proved that he contributed $690 in 1949 and $180 in 1950 under the decree of the Tennessee court for support of his wife and children. The remainder of the amount of $3,420 is alleged to consist of bonds in the amount of $300 and an "equity" of $2,250 in the real property conveyed to the wife in 1950. The son had sufficient ownership of the bonds to reduce them to cash *211 without the signature of petitioner and the evidence does not establish that any of the bonds were cashed during the taxable years. No proof was made of the value of petitioner's interest in the real property. Moreover, the evidence is devoid of proof of the cost of supporting the children, without which we are not in a position to determine whether the known contributions of petitioner exceeded one-half of the total cost. Accordingly, on this issue the respondent is sustained. Petitioner contends in the alternative that the total alleged payments of $3,420 are deductible as payments of alimony or of that nature, one-half in each taxable year. He relies exclusively upon the divorce proceedings pending in the Tennessee court, pursuant to which he concedes the payments were made. Alimony payments made directly by a husband are not deductible under section 23 (u) of the Code unless the amounts are includible in gross income of the wife under section 22 (k). The provisions of 22 (k) requiring the wife to include alimony payments in her gross income apply only to amounts received after she was "divorced or legally separated from her husband under a decree of divorce or of separate maintenance. *212 " Frank J. Kalchthaler, 7 T.C. 625; Charles L. Brown, 7 T.C. 715. No decree of divorce or of legal separation was entered at any time prior to the payments and the proceeding is still pending before the court under a cross bill filed by the wife. The payments having been made prior to a divorce or legal separation, they are not allowable as deductions. Robert A. McKinney, 16 T.C. 916: George D. Wick, 7 T.C. 723; affd., 161 Fed. (2d) 732. Concerning the bad debt deduction issue, petitioner argues that the bankruptcy of the maker of the note was only a defense to payment thereafter and, as a debt can not be declared as bad until an effort is made to collect it and such effort was made in 1949 without success, the deduction is allowable in that year. Petitioner misconstrues the statutory provision allowing deductions for bad debts. The right to such a deduction is limited to "Debts which become worthless during the taxable year." Section 23 (k) (1). Ascertainment by the creditor of worthlessness of a debt is not the test to be applied to the statute. The deduction must be taken in the year in which the debt became *213 worthless, regardless of the effort made prior thereto or thereafter to collect. Thus, the decisive point under the issue is whether the debt became worthless in 1949. Respondent's denial of the deduction in 1949 is based on a finding that the debt became worthless in 1947, in which year the maker of the note was going through bankruptcy proceedings. That petitioner filed a claim with the court for payment of the note he held of the bankrupt is inferred by the notice he received from the Referee in Bankruptcy. The evidence does not disclose when the bankruptcy proceedings terminated or what creditors received on their claims, if anything. It may be that the assets of the bankrupt were not sufficient to pay any portion of the claims. The meager facts before us on the question strongly indicate that, as determined by respondent, the debt became worthless in 1947. In any event there is no evidence in the record from which we can determine that the debt became worthless in 1949. Accordingly, the respondent is sustained on this issue because of lack of proof of error. Decisions will be entered for the respondent. Footnotes
1. Petitioner's counsel explains this figure as a typographical mistake, since the order revived was for the payment of $60 a month.↩